THE STATE, *Appellant*, v. KIRBY *et al.*

Division Two, May 2, 1893.

1. **Criminal Practice:** INDICTMENT: STATUTORY OFFENSE. It is necessary that an indictment for a statutory crime should aver every essential fact constituting the offense.

2. ———: ———: WAREHOUSEMAN, UNLAWFUL SALE BY. An indictment under Revised Statutes, 1889, secs. 742–746, against a warehouseman for the sale or removal of goods stored with him, must aver that he sold or removed the property without the assent of the holder of his receipt therefor.

*Appeal from Buchanan Criminal Court.*—HON. SILAS WOODSON, Judge.

AFFIRMED.

*R. F. Walker*, Attorney General, *A. D. Burnes*, Prosecuting Attorney, and *Jas. W. Coburn*, for the state.

(1). The indictment does charge a crime against the state. Revised Statutes, 1889, secs. 742, 746, 747. (2) The statute does not require, as an ingredient of the offense, that the wheat should have been stored for hire. The indictment need only follow the words of the statute. (See innumerable decisions on this point.) A bailee may be indicted for conversion, though the bailment was gratuitous. 2 Bishop on Criminal Law [7 Ed.] sec. 834, p. 472; *State v. Fairclough*, 29 Conn. 47. (3) The indictment by intendment, and in its context, fairly charges the defendants to be warehousemen, if that allegation were requisite; but it is not requisite, since the statute is leveled not only against warehousemen, but also against "other persons" who shall receive grain for storage, giving a written receipt therefor, and shall sell, remove or dispose of the same. Revised Statutes, 1889, sec. 742. The words "other persons" are *ejusdem generis* with the word warehousemen, which they follow. *Saint Louis v. Herthel*, 88 Mo. 128; *Saint Louis v. Bowler*, 94 Mo. 630; *Saint Louis v. Bell Telephone Co.*, 96 Mo. 623; *City of Kansas v. Hindequest*, 36 Mo. App. 584. The statute is intended to include all persons, whether warehousemen or not, who engage in receiving grain for storage, etc., giving written receipts therefor. (4) It was not necessary to charge that the wheat was removed, sold or disposed of with intent to cheat or defraud Frank Drais or

any other person. Revised Statutes, 1889, sec. 3983; *State v. McCollum*, 44 Mo. 345; *State v. Hackfath*, 20 Mo. App. 614; 1 Bishop on Criminal Procedure [3 Ed.] sec. 521, p. 328; 1 Bishop on Criminal Procedure [3 Ed.] sec. 523, p. 330. The sale, removal and disposition of the wheat was, in the indictment, alleged to have been done "unlawfully and feloniously." *State v. Morgan*, 20 S. W. Rep. 456. The term "feloniously" points to the intent which enters into a felony.. 1 Bishop on Criminal Law [7 Ed.] sec. 426, p. 271.

*Casteel & Haines* for respondents.

(1) The indictment fails to charge a crime against the laws of the state. Revised Statutes of Missouri, 1889, secs. 739, 742, 744; *Union Savings Ass'n v. St. Louis Grain Elevator Co.*, 81 Mo. 341. (2) The indictment does not charge that the defendants received the grain charged to have been stored for hire. See definition of warehouseman, 2 Rapalje & Lawrence's Law Dictionary, p. 1344. (3) The indictment does not charge that defendants were warehousemen or wharfingers. Revised Statutes, sec. 744. (4) The indictment fails to charge that the grain was removed or sold with the intent to defraud the said Frank Drais.

GANTT, P. J.—This is an appeal by the state from the judgment of the criminal court of Buchanan county, quashing the following indictment:

"STATE OF MISSOURI ⎱ ss.   In the Circuit Court,
  "County of Platte. ⎰       August Term, 1891.

The grand jurors for the state of Missouri, summoned from the body of Platte county, impaneled, charged and sworn, upon their oaths present that on

the twenty-third day of December, 1890, at the said county of Platte, state aforesaid, George W. Kirby was president, and Perry W. Noland was secretary of the Dearborn Milling Company, a corporation existing under and by virtue of the laws of the state of Missouri, and doing business at Dearborn in said Platte county, Missouri, in the receiving, storing and shipping of wheat and 'other grain, and the said George W. Kirby and Perry Noland were the agents, servants and managers thereof; that on said twenty-third day of December, 1890, one Frank Drais delivered to said corporation in its warehouse in Dearborn, in said Platte county, two hundred and ninety-eight and eighteen-sixtieths bushels of wheat, the property of the said Frank Drais, and worth $268.70, for the purpose of storing the same in the warehouse of said corporation, and which said wheat was actually received into the said warehouse of said corporation, and for which said wheat said corporation gave a written receipt to the said Frank Drais; and that thereafter, on the third day of April, at the said county of Platte, state aforesaid, the said George W. Kirby, the president, and the said Perry W. Noland, the secretary of said corporation, did then and there unlawfully and feloniously ship, transfer, remove and sell said wheat, the property of said Frank Drais, for which a written receipt had been given him by said corporation, without the written assent of the said Frank Drais, and without paying him therefor, and against the peace and dignity of the state.

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present that the Dearborn Milling Company is and was a corporation existing under the laws of the state of Missouri, doing business at Dearborn, Platte county, Missouri, on the dates hereinafter mentioned, in the receiving, storing and shipping of wheat and other grain; that George W. Kirby was the

president thereof and Perry W. Noland was the secretary thereof, and as agents and servants of said corporation were managing and conducting the business thereof; that on the twenty-third day of December, 1890, one Frank Drais delivered to said Dearborn Milling Company, in its elevator and store-room in Dearborn, in said Platte county, two hundred and ninety-eight and eighteen sixtieths bushels of wheat, the property of the said Frank Drais, worth $268.70, for the purpose of storing the same in the said elevator and store-room of said corporation, and which said wheat was actually received into the said elevator and store-room of said corporation, and for which said wheat said corporation gave a written storage receipt to the said Frank Drais; and that thereafter, on the third of April, 1891, at the said county of Platte, state aforesaid, the said George W. Kirby and the said Perry W. Noland, the agents, servants and managers of said corporation, the Dearborn Milling Company, did then and there unlawfully and feloniously ship, transfer, remove and sell said wheat, the property of the said Frank Drais, and without paying him therefor, against the peace and dignity of the state.

"A. D. BURNES, Prosecuting Attorney.

"A true bill.

"JOHN McADOW, foreman of the grand jury."

A change of venue was awarded to the criminal court of Buchanan county. At the March term, 1892, the defendants filed in said criminal court the following motion to quash:

"Come now the defendants in the above entitled cause and move the court to quash the indictment herein, for the reasons, to-wit:

"1. That the indictment fails to charge a crime against the laws of the state.

"2. The indictment does not charge that the defendants received the grain charged to have been stored for hire.

"3. That the indictment does not charge that defendants were warehousemen or wharfingers.

"4. That the indictment fails to charge that the grain was removed or sold with the intent to defraud the said Frank Drais."

The motion to quash the indictment was sustained by the court, to which action of the court the state at the time excepted, and judgment was rendered discharging defendants, to which the state at the time excepted.

The state prayed and was granted an appeal, and duly perfected the same according to law.

This indictment was evidently intended as a prosecution under sections 742, 746 and 747 of chapter 18 of the Revised Statutes of 1889, entitled "Bills of Lading, Warehouse Receipts."

Section 742, is as follows: *"Not to sell, etc., goods without written assent of person holding receipt.* No warehouseman, wharfinger, or other person, shall sell or incumber, ship, transfer, or in any manner remove, or permit to be shipped, transferred or removed beyond his control, any goods, wares, merchandise, grain, flour or other produce or commodity, for which a receipt shall be given by him, as aforesaid, whether received for storing, shipping, grinding, manufacturing or any other purpose, *without the written assent of the person or persons holding such receipt."*

Section 744, is as follows: "All receipts issued or given by any warehouseman, or other person or firm, and all bills of lading, transportation receipts and contracts of affreightment, issued or given by any person, boat, railroad or transportation or transfer company, for goods, wares, merchandise, grain, flour

or other produce, shall be and are hereby *made negotiable by written indorsement thereon*, and delivery in the same manner as bills of exchange and promissory notes; and no printed or written conditions, clauses or provisions inserted in or attached to any such receipts, bills of lading or contracts, shall in any way limit the negotiability or affect any negotiation thereof."
\* \* \*

Section 746 renders any warehouseman, wharfinger, forwarder or other person who shall violate any of the provisions of this chapter, guilty of a criminal offense punishable by indictment and, upon conviction, the offender may be fined not exceeding $5,000, or imprisoned in the penitentiary not exceeding five years, or by both such fine and imprisonment. A civil action for damages is also given by the same section.

The title of this chapter and every section of the act, indicates the purpose of its enactment. It was designed to prevent the issue of *false bills of lading and warehouse receipts*. It provides that no receipt for goods of any kind shall be given *unless the goods are at the time in store*. Duplicate receipts are forbidden unless the duplicate contains the word *duplicate*, written across the face of the instrument. These warehouse receipts are then declared negotiable, without regard to any conditions of limitations attempted to be placed on them by the warehouseman or other person or firm issuing them.

By section 742, it will be seen, no warehouseman, wharfinger or other person shall sell or incumber, ship, transfer or in any manner remove or permit to be removed beyond his control, any goods, wares or merchandise, grain or other commodity deposited with him, "for which a receipt shall have been given by him as aforesaid, whether received for storing, shipping, grinding, manufacturing or other purpose, *without the*

*written assent of the person or persons holding such receipt.*"

It is this section defendants are charged with violating. This is a statutory offense. Prior to its enactment, the acts charged in this indictment would have constituted only a breach of trust, or contract, subjecting the offender to a civil action. This being a statutory crime, it is essential that the indictment should contain an allegation of every essential fact constituting the offense. This rule of criminal pleading, Mr. Bishop rightly declares, pervades the entire adjudged law of criminal procedure. 1 Bishop on Criminal Procedure, 81; *State v. Terry*, 109 Mo. 601. There can not be a doubt that the legislature intended that the *holder* of these warehouse receipts, which it had declared should be negotiable, should be regarded as their owner so far as the warehouseman or other bailee was concerned, and therefore the consistency of the law appears in this section, 742, which requires *the assent of the holder of the receipt.* He must look to him for authority, not to the original depositor. *Harris v. Bradley*, 2 Dill. Cir. Ct. 284.

To render the warehouseman liable for a sale, or removal of the stored goods, then, under this section, it must be affirmatively charged that he sold or removed the stored property *without the assent of the holder of his receipt therefor.* This, the indictment in this case does not charge. It nowhere alleges Drais was the owner or holder of the receipt at the time of the alleged shipment by the milling company, and it seems too clear to require further discussion that it is insufficient. It is not even charged in the language of the statute. The court correctly ruled that it charged no offense known to our laws.

It becomes unnecessary to pass on other objections pointed out in the motion to quash.

The judgment of the criminal court of Buchanan county is affirmed. BURGESS and SHERWOOD, JJ., concur.

