## THE STATE v. ETCHMAN, Plaintiff in Error.

**Division Two, June 20, 1905.**

1. BUCHANAN CRIMINAL COURT: Act not Local or Special: Constitutional Law. Legislation which is authorized by the Constitution cannot be regarded as local or special, within the meaning of the constitutional prohibition, though its application is purely local. Whether an act of the Legislature be a local or a general law must be determined by the generality with which it affects the people as a whole, rather than by the extent of the territory over which it operates; and if it affects equally all persons who come within its range, it can neither be special nor local within the meaning of the Constitution. The provision of section 31, article 6 of the Constitution, that, "The General Assembly shall have no power to establish criminal courts, except in counties having a population exceeding fifty thousand," was not intended to require the Legislature, in order to exercise this power, to establish a criminal court in every county in the State having the required population. And, therefore, the act, passed in pursuance of this provision, creating a criminal court in Buchanan county, which is conceded to have a population exceeding fifty thousand, is not a special or local law, but is a valid and constitutional enactment.

2. ———: ———: Necessary Incidents: Implied Power. The act creating the Buchanan County Criminal Court being constitutional, the power exists by implication to provide for every necessary incident, without which the court could not be properly organized. And, therefore, the fact that the act "imposes duties upon the sheriff and clerk of the court and incidental expenses on the county not common to all sheriffs, clerks and counties throughout the State," does not render it unconstitutional.

3. LEGISLATIVE ENACTMENT: Recognition and Presumption of Validity. Where the validity of an act has been for many years recognized by the Bench and Bar and the people of the State, the court should approach the question of its constitutionality with great caution, and the presumption being in favor of its validity, it should be satisfied of its invalidity beyond a reasonable doubt, before it would be warranted in holding it to be in conflict with the Constitution.

Error to Buchanan Criminal Court.—*Hon. B. J. Casteel*, Judge.

AFFIRMED.

*Charles C. Crow* for plaintiff in error.

The law is by its own terms local and therefore void. State v. Anslinger, 171 Mo. 600; Chance v. Marion County, 64 Ill. 66; Ex parte Loving, 178 Mo. 194; Green v. Weller, 32 Miss. 652; Dyer v. Baynie, 54 Md. 87; U. S. v. Morris, 1 Curtis (U. S.) 50; Henderson v. Koenig, 168 Mo. 356; Ashbrook v. Schwab, 160 Mo. 109; State v. Hill, 147 Mo. 63; Ewing v. Hoblitzelle, 85 Mo. 64; State ex rel. v. Mason, 155 Mo. 486; Owen v. Baer, 154 Mo. 434; Bank v. Graham, 147 Mo. 257; People v. Wright, 6 Col. 92; Parker v. Savage, 6 Lea (Tenn.) 406; Walcot v. Wigton, 7 Ind. 44; Eason v. State, 11 Ark. 481; Wilcox v. People, 90 Ill. 186; State v. Granneman, 132 Mo. 326.

*Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for the State.

(1) ''Legislation which is necessary or appropriate to carry into effect a command of the Constitution or a direct grant of power, or which results directly or indirectly from a specific constitutional requirement, is neither local nor special.'' State v. Shields, 4 Mo. App. 259; Ewing v. Hoblitzelle, 85 Mo. 65; State ex rel. v. Yancy, 123 Mo. 391; Kenefick v. St. Louis, 127 Mo. 1; Spaulding v. Brady, 128 Mo. 653; State ex rel. v. Mason, 153 Mo. 53. (2) Whenever a power is granted, every thing necessary to make it effectual or requisite to attain the end is implied. The act is not unconstitutional because it imposes duties on the sheriff, and the clerk of the court, and incidental expenses on the county, not common to all sheriffs, clerks and counties throughout the State. Ex parte Kiburg, 10 Mo. App. 442; State ex rel. v. Shields, 4 Mo. App. 259; Ex parte Marmaduke, 91 Mo. 262; State ex rel. v. Mason, 155 Mo. 498; Broom's Legal Maxims (8 Am. Ed.), pp. 479, 486; Sutherland, Stat. Const.

(2 Ed.), sec. 508.    (3) In case of doubt as to the constitutionality of an act, every possible presumption, not directly inconsistent with the language and subject, will be made in favor of its validity.   Ewing v. Hoblitzelle, 85 Mo. 64; Phillips v. Railroad, 86 Mo. 540; State ex rel. v. Yancey, 123 Mo. 391; State v. Thompson, 144 Mo. 314; State ex rel. v. Aloe, 152 Mo. 466; State v. Hamey, 168 Mo. 167; Cooley, Constitutional Limitations (7 Ed.), pp. 237, 255.   An act of the Legislature is not to be declared void, unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt.   State v. Layton, 160 Mo. 499.   Every reasonable intendment should be made to sustain it. State v. Hope, 100 Mo. 347;  State ex rel. v. Jackson County, 102 Mo. 531; State ex rel. v. Simmons Hardware Co., 109 Mo. 118.   That an act has been assumed to be valid by two decisions of one of the courts of appeals and one of the Supreme Court, and has been acquiesced in for years by the people and all departments of government, is sufficient to create a reasonable presumption in favor of its constitutionality, and, therefore, to uphold its validity.   State ex rel. v. Laughlin, 75 Mo. 147;  Railroad v. County Court, 53 Mo. 158; State ex rel. v. Pond, 93 Mo. 606; State ex rel. v. Railroad, 92 Mo. 137; Edwards v. Lesuer, 132 Mo. 410; Kelly v. Weeks, 87 Mo. 396.   No act should be declared unconstitutional if it be fairly open to a construction which will harmonize it with the organic law.   Kenefick v. St. Louis, 127 Mo. 1.

FOX, J.—On the 4th of April, 1903, the grand jury of Buchanan county, Missouri, returned an indictment against the plaintiff in error, charging him with setting up, in said county, on March 31, 1903, certain gambling tables and devices, two of which were a chuck-a-luck table and a crap table.

On arraignment, on April 6, 1903, a plea of not guilty was entered, which was withdrawn on June 27th,

and a plea of guilty entered in its stead. Thereupon, the court assessed the punishment at six months in the county jail. A motion in arrest of judgment was filed, but the record is silent as to any disposition of said motion.

On August 12, 1904, a writ of error was sued out in this court and the clerk of the lower court, in obedience thereto, has forwarded a certified copy of the record proper in said cause, which is now before the court for consideration.

### OPINION.

The same questions, with the exception noted, involved in this case were decided by this court in State v. Rosenblatt, 185 Mo. 114, and State v. Etchman, 184 Mo. 193, except the one proposition now presented in this case as to the constitutionality of the act creating the criminal court of Buchanan county. The act creating the criminal court of Buchanan county will be found in Revised Statutes 1899, section 1, page 2568. It provides: "Pursuant to sections one and thirty-one of article 6 of the Constitution, and to a notice" (set out in full) "a court of record is hereby established in the county of Buchanan, said county having a population exceeding 50,000 inhabitants, and to be designated and called the criminal court of Buchanan county."

There is but one proposition presented in the record in this cause, and that is embraced in the contention of plaintiff in error that the act as herein noted establishing the Buchanan County Criminal Court is void and unconstitutional. The grounds upon which this contention is predicated may be briefly stated as follows:

1. Because it is in conflict with subdivision 2 of section 53, article 4 of the Constitution, which provides: "The General Assembly shall not pass any local or special law . . . regulating the affairs of counties, cities, townships, wards or school districts."

2.   Because it is in conflict with subdivision 15, section 53, article 4, providing that no local or special law shall be passed, "creating offices, or prescribing the powers and duties of officers in counties, townships, election or school districts."

3.   Because it is in conflict with subdivision 17, section 53, article 4 of the Constitution, providing that no local or special law shall be passed "regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding or inquiry before courts, justices of the peace, sheriffs, commissioners, arbitrators or other tribunals, or providing or changing method for the collection of debts, or the enforcing of judgments, or prescribing the effect of judicial sales of real estate."

4.   Because it is in conflict with subdivision 32, section 53, article 4 of the Constitution, which prohibits the passage of any local or special law, "where a general law can be made applicable; and whether a general law could have been made applicable in any case is hereby declared a judicial question."

Learned counsel for plaintiff in error has presented the question involved in this controversy in its strongest light, and it is not out of place to say that about all has been said in his oral argument and brief now before us that can be said upon this proposition; yet, after a careful consideration of all the authorities, we are unable to give our assent to the contention so ably presented by counsel.

The origin of the power in the legislative branch of the government of this State to create and establish criminal courts is found in section 1, article 6 of the Constitution, which provides: "The judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in the Supreme Court, the St. Louis Court of Appeals, circuit courts, criminal courts, probate courts, county courts and municipal corporation courts." Following

this provision of the Constitution we find that section 31 article 6 of the Constitution places a limitation upon the power of the General Assembly to establish and create criminal courts. It provides: "The General Assembly shall have no power to establish criminal courts, except in counties having a population exceeding fifty thousand."

It is apparent that while section 31, article 5, as above noted, limits the power of the General Assembly in respect to the establishment of criminal courts, yet it is equally clear that it fully recognizes the power of the General Assembly to establish such courts in counties having the required poulation. We have, then, as applicable to the proposition now under consideration, first, a constitutional provision vesting the judicial power of the State in certain designated courts, among them, criminal courts; secondly, by a provision in the same Constitution we have a full and express recognition of the power of the General Assembly to establish criminal courts in counties having a population exceeding 50,000.

The act of the General Assembly establishing the Buchanan County Criminal Court was enacted in pursuance of the constitutional provisions above referred to, and the fair and reasonable interpretation of such provision as applicable to the grant of power to the General Assembly to pass the act creating such court must furnish the solution of the proposition now confronting us.

This leads us to inquire as to what rule of construction should be adopted in the interpretation of the constitutional provisions involved in this proceeding. After diligent search we are unable to find any rule which is more practical than the one announced by that eminent jurist and author, Mr. Story, in his work upon the Constitution. He thus states it:

"Every word employed in the Constitution is to be expounded in its plain, obvious and common-sense

meaning, unless the context furnishes some ground to control, qualify, or enlarge it.  Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of life, adapted to common wants, designed for common use, and fitted for common understandings.  The people make them, the people adopt them, the people must be supposed to read them, with the help of common sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss.'' [1 Story, Const. (5 Ed.), sec. 451.]

The General Assembly of this State, fully recognizing the power granted by the organic law of this State to create and establish criminal courts, in harmony with the rule as announced by Mr. Story, proceeded in a practical way to exercise such power and put the constitutional provisions into full force by the creation and establishment of the Buchanan County Criminal Court, which county, it is conceded, had a population of more than 50,000.

It is insisted by plaintiff in error that the act creating the Buchanan County Criminal Court is a local or special law, and is in conflict with subdivision 32 of section 53, article 4 of the Constitution, which prohibits the passage of any local or special law where a general law can be made applicable.  In other words, to re-state the contention in this cause, it is urged that the only way in which the General Assembly can exercise the power recognized by the Constitution to establish criminal courts is by an enactment establishing and creating criminal courts in every county in the State having a population of more than 50,000.  We are unable to agree with counsel upon this insistence.  We are unwilling to believe that the framers of the Constitution, in recognizing the power of the General Assembly to establish criminal courts in counties having a popula-

tion of more than 50,000, meant to say to the lawmaking power that you can only exercise this power providing you establish a criminal court in every county in the State possessing the required population, regardless of any local conditions or demands for the establishment of such courts. If section 31, article 6 of the Constitution is to be given a reasonable and practical interpretation, the power recognized in the General Assembly to establish criminal courts in counties having a population exceedin 50,000, does not necessarily mean that the Legislature, in the exercise of such power, must include every county in the State. The presumption must be indulged that the framers of the Constitution could foresee the common wants of the people of this State, and that there would be in some counties large and populous cities, and a demand for the creation of separate criminal courts, while in other counties of the required population, purely agricultural, with small cities and villages, there would be no need or demand whatever for a separate criminal tribunal. That is the only practical and reasonable construction that can be given the provisions of the Constitution now under consideration. To hold otherwise, would not be in harmony with the rule indicated by Mr. Story, for if, in pursuance of the powers recognized by the Constitution, the General Assembly must establish criminal courts, if at all, in every county in the State, regardless of any need or demand for them, then such provision would fall far short of being of that "practical nature founded on the common business of life, adapted to common wants, designed for common use, and fitted for common understandings."

Buchanan county had a population of more than 50,000, and the act assailed in this proceeding, creating the Buchanan County Criminal Court, was simply appropriate legislation, in the exercise of a recognized power by the Constitution, and which the Constitution by its terms contemplated would be exercised by the

General Assembly, and, therefore, cannot be held to be either special or local within the true intent and meaning of the Constitution.

In Kenefick v. St. Louis, 127 Mo. l. c. 10, BARCLAY, J., very clearly and concisely announced the true rule as to legislation of this charater. He said: "Legislation which is necessary or appropriate to carry into effect a positive command of the organic law, or is required or directly contemplated by its terms, cannot justly be held to be either special or local within the true intent and meaning of the Constitution. Legislation of that description is, indeed, merely the machinery to put the Constitution into full force." To the same effect is Spaulding v. Brady, 128 Mo. l. c. 658. MACFARLANE, J., speaking for the court in that case, said: "The doctrine has been recognized by this court that legislation which is authorized by the Constitution itself cannot be regarded as loal or special, within the meaning of the constitutional prohibition, though its application is purely local. [State ex rel. v. Walton, 69 Mo. 556; Kenefick v. St. Louis, 127 Mo. 1, and cases cited.] The principle contained in the observation of Judge LEWIS, in State ex rel. v. Shields, 4 Mo. App. 259, that 'no law can be either local or special, within the meaning of the Constitution, which results directly or indirectly from a specific constitutional requirement,' is the sound basis upon which these decisions rests."

The command of the Constitution is that the judicial power of the State shall be vested in certain courts, including criminal courts. This requirement contemplates that the legislative branch of the State government will make appropriate provisions in creating and establishing courts in which such judicial power is to be vested. "No law can be either special or local, within the meaning of the Constitution, which results directly or indirectly from a specific constitutional requirement." [Ewing v. Hoblitzelle, 85 Mo. l. c. 74; State ex rel. v. Shields, 4 Mo. App. 259; Whallon v. Ingham

Circuit Judge, 51 Mich. 503.] ''Nor can the efficient operation of the functions of a department of the State government be in any manner subject to the control, or dependent upon the action, of the citizens of any particular locality in the State. In the nature of things, the act in question is not, and cannot be, a special or local law.'' [State ex rel. Hughlett v. Hughes, 104 Mo. 1. c. 470.]

The proposition involved in this case is by no means a new one. The precise question here presented has been in judgment before this court. In Ex parte Renfrow, 112 Mo. 591, the constitutionality of the creation of the criminal court of Greene county was challenged. While the proposition in this cause was not thoroughly presented in the briefs of counsel, nor was the question fully reviewed by this court in the decision of that case, however, it was suggested in the briefs that the act establishing the Greene County Criminal Court was violative of the provisions of the Constitution in regard to special legislation. Responding to that suggestion this court said: ''There is nothing in the suggestion that the act in question is obnoxious to the provisions of the Constitution in regard to special legislation. The Legislature plainly has power to provide for a criminal court in any county of the State having a population exceeding fifty thousand.''

In State ex rel. v. Yancy, 123 Mo. 391, the constitutionality of the act creating the Greene County Criminal Court was directly involved. The question was fully presented in the briefs of counsel. This court, speaking through BURGESS, J., fully responded to the contentions of counsel in that case. In discussing the proposition he said: ''The act in question is in no sense special or local within the meaning of the Constitution because of the fact that it creates a court at one particular location. The same could as well be said with respect to all other courts in the State, to which all persons, without regard to habitation, appeal for the

redress of wrongs done them, and the adjustment of
their rights. The court created by the act in question
has original jurisdiction of all crimes committed within
the county of Greenè, as well, also, as of any criminal
case that may be taken thereto by change of venue from
any other court in the State having criminal jurisdic-
tion, it matters not where it may be. Its judge is com-
missioned and paid by the State, and it matters not
where the court may be held; it is a criminal court for
the State as much so as the criminal court of St. Louis,
Kansas City or St. Joseph.'' During the course of the
opinion, emphasizing the correctness of the conclusions
reached as to the validity of the act assailed, the prin-
ciples as applicable to the interpretation of the act were
clearly stated. It was said: ''Whether an act of the
Legislature be a local or general law must be deter-
mined by the generality with which it affects the peo-
ple as a whole, rather than the extent of the territory
over which it operates, and if it affects equally all per-
sons who come within its range, it can neither be special
nor local within the meaning of the Constitution. More-
over, the general power of the Legislature to establish
criminal courts in counties having a population exceed-
ing fifty thousand is clearly recognized by section 31,
article 6 of the Constitution, as by prohibiting the estab-
lishing of criminal courts in such counties, by express
terms, having a population of less than fifty thousand
people is a recognition of the power to establish them
in counties having a population exceeding fifty thou-
sand. When there is a specific grant of power con-
ferred by the Constitution upon the Legislature, upon
any certain or particular subject, an act passed in pur-
suance of such grant will not be held unconstitutional
upon the ground that it is local or special legislation.
[State ex rel. v. County Court, 50 Mo. l. c. 324; State
ex rel. v. Watson, 71 Mo. 470; Ewing v. Hoblitzelle, 85
Mo. 64.] The fact that notice was given of the intended
application to the Legislature for the passage of a law

creating the court in question and of a court similar in all respects in Buchanan county did not·change the law and was in all probability done through an abundance of caution, certainly not because it was a necessary prerequisite." This case was approvingly quoted in Kenefick v. St. Louis, and Spaulding v. Brady, supra. We are of the opinion that the law was correctly announced in the Yancey case and see no legal reason for departing from the conclusions therein reached.

The criminal court of Buchanan county is by no means a mere county court. As was said in State ex rel. Hughlett v. Hughes, "It is pre-eminently a State court, affecting in its operations all the citizens of the State, deriving its power directly from the organic law of the State and laws passed by the Legislature in pursuance thereof." While it may be said that the territory in which the court is held is limited, every citizen of the State is interested in the administration of the law, and the offenses of which the court has jurisdiction are those presumptively that affect the peace and dignity of the entire State. It is in truth and in fact a criminal court of the State of Missouri, and in no sense is it to be classed as a local court, nor is the law which created it a special or local law within the meaning of the provisions of the Constitution.

Counsel for plaintiff in error earnestly insists that the criminal court created by the act involved in this proceeding was not in pursuance of an express command of the Constitution, and undertakes to draw a distinction between the enactment of a law in obedience to an express command of the Constitution and one enacted in pursuance of an implied grant of power. As applicable to this case we are of the opinion that no such distinction exists. While the constitutional provisions in respect to the establishment of criminal courts do not expressly command the Legislature to create such courts, that they

contemplate by their terms the creation of them is be-yond question, and the principles as herein announced are as applicable to the constitutional provisions in their present form as they are in cases where the ex-press command is given to enact the legislation. It was expressly ruled, in Kenefick v. St. Louis, that in either case where the legislation was in pursuance of a posi-tive command of the organic law, or is required or di-rectly contemplated by its terms, the enactment cannot justly be held to be either special or local within the true intent and meaning of the Constitution.

The cases of State v. Hill, 147 Mo. 63, and Ash-brook v. Schaub, 160 Mo. 107, do not conflict with the principles announced in Ex parte Renfrow, and State ex rel. v. Yancy, nor with the conclusions as announced in the case at bar. An examination of the Hill and Ash-brook cases cited by plaintiff in error makes it manifest that the questions involved in those cases are entirely dissimilar to the proposition presented by the record in this cause. The validity of the act creating the Buch-anan County Criminal Court was in no way assailed or challenged. The only question presented by these cases was the amendment to the act establishing the criminal court of Buchanan county, approved March 1, 1897, which undertook to empower the judge of the criminal court of Buchanan county, when called upon, to preside and try causes pending in the circuit courts of the State. With the announcement of the conclus-ions that this amendment was in conflict with the Con-stitution which prohibited the enactment of a special law where a general law could be made applicable, we are entirely satisfied, but that is not this case. That amendment was clearly violative of the constitutional provisions noted, for the reason that it undertook to select one judge of a criminal court of this State and confer upon him powers not given to any other judge of the criminal courts of the State. It will be observed that this amendment does not rest upon the same foun-

dation as the act of the General Assembly establishing the criminal court of Buchanan county; for it is apparent there is no constitutional provision commanding such legislation or in which by the terms of the constitutional provision such legislation is required or contemplated; hence, we must keep in view upon this proposition the distinction between the enactment of a law in pursuance of a constitutional provision requiring or by its terms contemplating such enactment, and legislation upon subjects about which the organic law of the State is absolutely silent. The mere fact of the statement by the learned judge in Ashbrook v. Schaub, that the act creating the Buchanan County Criminal Court was a special law, and enacted in accordance with the provisions of section 54, article 4 of the Constitution, cannot be treated as overruling the prior decisions upon that subject. The Buchanan County Criminal Court act was calculated to mislead as to the nature and character of the legislation. It is clear that the General Assembly through abundance of caution undertook to comply with the provisions of the Constitution in respect to special legislation, but that by no means makes it a special or local law. The remarks of the court in the Ashbrook-Schaub case must therefore be treated as mere "obiter" and in no way changing the principles of law as applicable to this case, which were so clearly and correctly announced in State ex rel. v. Yancy. It is obvious that State v. Hill did not overrule State ex rel. v. Yancy, nor was it so regarded by the judges who wrote the opinions in those cases. SHERWOOD, J., who wrote the Hill case, fully concurred with BURGESS and GANTT, JJ., in the Yancy case; and on the other hand, BURGESS and GANTT, JJ., concurred with SHERWOOD, J., in the Hill case, therefore, it is made apparent that the court fully recognized that there was no conflict in the principles announced in those cases.

Upon the remaining proposition urged by counsel for plaintiff in error, "that the act is unconstitutional

because it imposes duties on the sheriff and clerk of the court and incidental expenses on the county not common to all sheriffs, clerks and counties throughout the State,'' it is sufficient to say that, having held that the act creating the criminal court was constitutional, the power exists by implication to provide for every necessary incident, without which it could not become properly organized. [Ex parte Marmaduke, 91 Mo. l. c. 262; State ex rel. v. Mason, 155 Mo. 486; Sutherland, Stat. Const., sec. 341; 2 Beach's Pub. Corp., sec. 1314; State v. Willson, 82 Tenn. 697; Moulton v. Reid, 54 Ala. 325; Parker v. Way, 15 N. H. 51; 9 Bacon's Ab., 219-220; People ex rel. v. Eddy, 57 Barb. 593.]

The validity of the act establishing the Buchanan County Criminal Court has for many years been fully recognized by the Bench and Bar, as well as the people of this State. It is, therefore, important that we be not unmindful of the repeated admonition to courts, when they are called upon to pronounce the invalidity of an act of the Legislature passed with all the forms and ceremonies requisite to give it force, that they approach the question with great caution. The presumption is in favor of the constitutionality of this act, and before this court would be warranted in holding it invalid because in conflict with the Constitution, it should be satisfied of its invalidity beyond a reasonable doubt. [Ewing v. Hoblitzelle, 85 Mo. 64; Lynch v. Murphy, 119 Mo. 163; State v. Addington, 77 Mo. 110; State ex rel. v. Railroad, 48 Mo. 470.]

We have thus given expression to our views upon the validity of the act creating the Buchanan County Criminal Court, which results in the conclusion that such act is a valid and constitutional law, and that the criminal court of Buchanan county, organized in pursuance of it, is a legally constituted tribunal.

The judgment in this cause should be affirmed, and it is so ordered.

All concur.